# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        Plaintiff,

        -vs-                                                   Case No. 06-CR-264

**MICHAEL CORNELIUS,**

        Defendant.

# DECISION AND ORDER

        This case is before the Court on remand from the Seventh Circuit Court of Appeals. On remand, this Court was directed to hold an evidentiary hearing to further explore the issue of whether or not the Assistant United States Attorney intended by his actions at trial to cause a mistrial. Those actions at trial revolve around a specific question that the Assistant United States Attorney put to a witness, one Hugo Delportillo, the answer to which resulted in the Court granting the mistrial in question. The specific question to Delportillo was: "Do you know if Baldomero Castillo had other sources of crack besides you?" Instead of answering "yes" or "no" to the question, Delportillo identified the defendant, Michael Cornelius, which the Court had previously prohibited. Subsequent to the granting of the motion for mistrial and the issuance of a superceding indictment, Cornelius brought a motion to dismiss. This Court referred the motion to a Magistrate Judge who denied Cornelius's request for an evidentiary hearing and denied the motion to dismiss on the objective facts and

circumstances presented. This Court adopted the Magistrate Judge's Recommendation *in toto*.

The Court of Appeals held that a "more thorough analysis of the facts surrounding what the prosecutor's interest was in questioning Delportillo" was necessary. Specifically, the Court of Appeals is concerned as to why the "magistrate judge (and hence this Court) did not address the question of why the prosecutor asked the question in the first place."

The Court has held the required evidentiary hearing and finds that the Assistant United States Attorney did not intend by his examination of the witness to deliberately introduce error into the trial to provoke the defendant into moving for a mistrial.

This determination is based on the Court's assessment of the testimony and the credibility of the witnesses both at the trial and the hearing. The Court starts by outlining facts from the Seventh Circuit opinion which establish context.

> On the third day of trial, when it was time for Delportillo to take the stand, the district court revisited the issue and ruled that Delportillo could testify, but not as to anything that Castillo told him about Cornelius being a supplier of cocaine. A brief recess was taken, during which time the government represents that it explained the ruling to Delportillo. The jury was then brought in, Delportillo was sworn, and he began to give his testimony. Delportillo testified that he was a member of the Latin Kings and that he knew Castillo and Cornelius, both of whom he identified in the courtroom. He testified that he had supplied Castillo with cocaine on a number of occasions, stating that he provided him with "two ounces here and there." The government pressed further on the topic, and the following exchange occurred:
>
>> GOVERNMENT: Do you know if Baldomero Castillo had other sources of cocaine besides you?

> CASTILLO'S COUNSEL: I'm going to object. That calls for speculation.
>
> GOVERNMENT: If you know.
>
> > THE COURT: No. He may answer.
>
> GOVERNMENT: Do you know if Baldomero Castillo had –
>
> > THE COURT: The question is whether or not there were – if he knows of any other sources.
>
> DELPORTILLO: If I knew where Baldo could get some?
>
> GOVERNMENT: You know any other people who were sources for cocaine for Baldomero Castillo?
>
> > CORNELIUS'S COUNSEL: I'm going to object, your Honor. And I'm going to ask for a sidebar.

Despite a question from the government that appeared likely to elicit a response from Delportillo about Cornelius being a source of supply to Castillo – testimony the court had prohibited – the district judge denied Cornelius's objection and request for a sidebar, and allowed questioning to continue. In so ruling, the district judge stated **"I assume the prosecutor knows the question he is asking,"** indicating that the court likely assumed that the government could not actually be seeking the prohibited answer from Delportillo. Questioning continued, and an exchange occurred that triggered yet another mistrial and set into motion the double jeopardy issue that is now before us:

> DELPORTILLO: What was the question again?
>
> **GOVERNMENT: Do you know if Baldomero Castillo has any other source and – had other sources in supply of cocaine besides you?**

-3-

**DELPORTILLO: Yeah, Mike [Cornelius].**

CORNELIUS'S COUNSEL: Your Honor, I'm going to ask for a sidebar, please.

As indicated, the Court granted the defendant's motion for a mistrial, the government moved to sever the two defendants, Cornelius brought the motion to dismiss the superceding indictment, and the Magistrate Judge denied the motion to dismiss (adopted by this Court) after rejecting Cornelius's right for an evidentiary hearing finding that the facts did not warrant a hearing.

At trial, the Court allowed the question at issue to be asked by the prosecutor. The question of whether or not the witness knew of other sources, was not prejudicial in and of itself. Indeed, if Delportillo had responded to the question with a "yes" or "no" answer that would have been the end of it. The Court, not knowing whether related testimony or evidence would be presented, allowed the prosecutor to try his case. The Court at that time did not view the question as "needless" but possibly relevant if only, as the prosecutor explained to the Magistrate Judge, to "argue by inference in closing argument." Cornelius makes the point that justification for asking the question was raised only later. However, it squares with the Court's view at the time it allowed the question to be asked that there was a valid reason for asking it. This evidentiary ruling was also grounded in the confidence the Court had in the prosecutor's experience and probity. The Court was confident that this experienced prosecutor properly cautioned his witness to not go where the witness ultimately went. It is also the reason the Court denied a side bar conference when the defendants first raised an objection to the question. This Court's confidence and surety in the prosecutor is

reflected in the Court's comment, "I assume the prosecutor knows the question he is asking," when the defendant's request for a sidebar was denied.

In addition, and most important, the Court not only allowed the question to be asked but found no need to hold a hearing because of the favorable opinion this Court had regarding the integrity of the prosecutor. This opinion is based upon approximately twenty-five years of experience with him both on the State and Federal bench. The Court had never witnessed during that period of time the slightest indication of improper behavior or unprofessional conduct and did not view his actions at the trial as rising to that level. The Court did not view his actions as a purposeful intent to abort the trial.

However, as the remand makes clear, given the inappropriate response of the witness Delportillo to the question in issue and the subsequent concession by the prosecutor that the charge against Cornelius was going nowhere without the excluded evidence, this Court should have delved further into the motives of the prosecutor.

The Court now has heard the testimony of the witnesses and observed their demeanor and finds all of them to be credible. Its opinion of the prosecutor and his honesty, therefore, has not changed and compels it to conclude that the asking of the question at issue was, at minimum, as the prosecutor admitted later, a mistake. Although the Court views the prosecutor's action as a significant blunder, it still cannot conclude that it was a designed attempt to sabotage the trial.

This conclusion is supported by the testimony of Detective John Belsha[1] and Delportillo whom the Court has found to be truthful on the matter. Although Cornelius is dissatisfied over the efforts that the prosecutor made to counsel the offending witness, the witness was not directed to give the answer he gave, but rather the contrary. Delportillo testified at the hearing that he was instructed by the prosecutor and Detective Belsha not to mention Cornelius in response to the question. Delportillo said he gave the wrong answer not because he was told to but because he was nervous. The Court, having observed Delportillo at the trial and at the hearing, has no reason to doubt that answer. The efforts of the prosecutor should have been enough to guard against the offending answer. In any event, those efforts do not suggest intent on the prosecutor's part to provoke a mistrial.

The Court's findings are further supported by the following. First it was the prosecutor who argued against the Court's granting of the motion for mistrial. Although a clever prosecutor bent on provoking a mistrial might object to the granting of the mistrial he is intending to induce to provide cover for that improper intent, the Court finds that is not the case here. The Court again relies upon the demeanor of the prosecutor while testifying at the hearing which is consistent with his longstanding record of honesty before this Court.

Second, the Court concurs with the government's position that the case was not a sure loss for the government. There was enough evidence on the record from which the government could have made a strong argument as to the possession of cocaine with intent

---

[1] The Court over the years has had Belsha as a witness on other occasions in this Court and has been impressed on all of these occasions by his professionalism, competence, and integrity. This Court in the past has commented on the record as to those characteristics.

to deliver charge. And, if found guilty of that offense, Cornelius was exposed to essentially the same penalties. This too supports the Court's conclusions.

Lastly, this case has had a tortuous history to say the least and a variety of circumstances have made it difficult to conclude. Both sides seek an end to it. These circumstances too, operate against the charge that the prosecutor intentionally "kicked the can down the road."

Was a mistake made? Yes. Was the examination of the witness Delportillo botched? Again, yes. Indeed the prosecutor has admitted, in hindsight, that he never would have asked the question which became the basis for this appeal. But in the heat of trial mistakes are made, some of a bonehead variety. These mistakes however, cannot automatically be characterized as purposeful efforts to abort a trial. Frustrating as the history of the case is, the Court finds that the questioning by the prosecutor of the witness Delportillo which led to this mistrial was not an intentional effort on his part to accomplish that end.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Cornelius's motion to dismiss is **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2011.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**